IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |  |
|---|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK), | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| URS CORPORATION; URS GROUP, INC.; TRISTATE ENVIRONMENTAL MANAGEMENT SERVICES, INC. t/a TRISTATE ENVIRONMENTAL SERVICES, INC. t/a TRISTATE PROBING & DRILLING, INC.; and JOHN DOE 1-10 (a fictitious name); and ABC CORPORATION 4-10 (a fictitious name), | : | |
| | : | CIVIL ACTION |
| Defendants, | : | |
| | : | No. 05-4175 |
| and | : | |
| | : | |
| TRISTATE ENVIRONMENTAL MANAGEMENT SERVICES, INC., improperly impleaded as TRISTATE ENVIRONMENTAL MANAGEMENT SERVICES, INC. t/a TRISTATE ENVIRONMENTAL SERVICES, INC., t/a TRISTATE PROBING & DRILLING, INC., | : | |
| | : | |
| Defendant/Third-Party Plaintiff, | : | |
| v. | : | |
| | : | |
| KBN GENERAL CONTRACTING; JOSEPH C. COLLACHI; ABC CORPORATION 1-10 (a fictitious name); JOHN DOE 1-10 (a fictitious name) and the UNITED STATES OF AMERICA, | : | |
| | : | |
| Third-Party Defendants. | : | |

-1-

**MEMORANDUM**

**Baylson, J.**                                                                                                           **November 21, 2007**

**I.      Introduction**

This case involves an allegedly negligent drilling project which damaged underground cables owned by Plaintiff National Railroad Passenger Corporation ("Amtrak").  Defendant and Third-Party Plaintiff, TriState Environmental Management Services, Inc. ("TriState"), brought third-party claims against several third-party defendants, including the United States of America ("USA"), which moves to dismiss the one third-party claim, for Negligence, filed against it.

**II.     Background**

     **A.      Factual Background**

According to the pleadings, the drilling at issue in this case occurred on United States Postal Service ("USPS") property.[1]  The drilling was part of an environmental project designed to prepare the property for sale.  USPS contracted with URS Corporation and URS Group, Inc. (collectively, "URS") to obtain URS's environmental consulting and project management services.  A USPS employee, Ann Carter, was designated as the Contracting Officer's Representative ("COR") for the project.

One of URS' primary tasks was to install groundwater monitoring wells beneath the paved parking area on the property.  To carry out this task, URS subcontracted with two parties.  URS hired Defendant KBN General Contractors ("KBN") to "mark out" the locations of the wells and TriState to conduct the actual drilling.  KBN placed the "mark outs" on July 11, 2003.  On August 7, 2003, TriState began drilling.  That same day, the drilling hit underground

---

[1] The parties do not dispute that the USPS is an agent of the USA.

communication and signal cables, owned by Amtrak, and caused the damages that give rise to this lawsuit.

### B. Procedural History

Plaintiff Amtrak filed its Complaint (Doc. No. 1) on August 4, 2005, against URS, TriState, ABC Corporation and John Doe.  TriState filed a cross-claim against URS (Doc. No. 6) as well as a Third-Party Complaint against USPS and others (Doc. No. 15).  The case was subsequently placed into suspense (Doc. No. 25) on May 31, 2005 while settlement conferences continued before Magistrate Judge Strawbridge.  The case was removed from suspense on June 1, 2007.  USPS filed a motion to dismiss the Third-Party Complaint against it (Doc. No. 37) on October 13, 2006, and this Court granted that motion on June 14, 2007.[2]  See Doc. No. 50.  On July 12, 2007, TriState received permission to amend its third-party complaint to add the United States as a defendant; it did so on July 17, 2007.  (Doc. No. 59).  On September 24, 2007, Third-Party Defendant USA moved to dismiss the Amended Complaint.  The Court now addresses that motion.

### C. Third-Party Complaint

TriState's Complaint against USA alleges, among other things, that USPS, as the agent of the USA, was negligent by allowing the drilling to occur without knowing the location of all underground facilities.  (Compl. ¶ 68-71.)  TriState alleges that USPS employees directed it where to drill.  (Compl. ¶ 19.)  TriState's Third-Party Complaint also alleges that USPS, as the agent of the USA, did not exercise reasonable care in hiring URS, directing URS' activities,

---

[2] This Court granted USPS's motion to dismiss because the Federal Tort Claims Act does not permit claims against the Postal Service but only against the United States itself.  For further detail, see Doc. No. 50.

hiring its own employees, supervising its own employees, and supplying information to URS and/or KBN. (Compl. ¶ 73.)

**III.    Parties' Contentions**

    **A.    USA**

USA first argues that this Court should dismiss TriState's claim for lack of subject matter jurisdiction. According to USA, the United States has not waived sovereign immunity for the negligence of independent contractors, and since TriState is an independent contractor, the USA is immune from claims based on TriState's negligence.[3]

USA then argues that TriState can not demonstrate any set of facts under which USA breached a duty. With this argument, USA essentially states that when it hired UBS, it delegated, by contract, any responsibility it may have had for locating underground cables to URS. USA argues that TriState does not support the contention that USA was negligent in hiring URS and that in fact, URS is a reputable firm with extensive experience. USA claims that by hiring URS, it severed any liability that could otherwise have reached it.

Third, USA argues that it was improperly joined under Rule 14. According to USA, TriState could only bring USA in if USA owed a duty to TriState that differed from any duty USA may have owed to Amtrak, the main plaintiff. USA asserts that since there was no contract or "direct relationship" between USPS and TriState, USPS (as agent of USA) does not owe TriState any duties and thus can not indemnify TriState. USA further contends that the contract which designated Ms. Carter as the COR was a contract between USPS (as agent of USA) and

---

[3] As discussed in greater detail below, USA appears to have misunderstood the nature of TriState's claims against it.

URS, and therefore does not create a relationship between USPS and TriState to support Rule 14 joinder.  USA also maintains that TriState's contribution claim must fail because USA and TriState could not be deemed joint tortfeasors.

Finally, USA contends that no presumptive truthfulness attaches to TriState's allegation that the USA directed TriState where to drill.  USA appears to first support this contention by claiming that such an allegation relates to subject matter jurisdiction and is thus a jurisdictional fact.  USA then supports this contention with a fact-based argument addressing the relative roles and expertise of USPS employee Ann Carter and TriState.

      **B.**      **TriState**

TriState argues that subject matter jurisdiction exists because it does not assert that the USA's subcontractors were negligent but that the USA's employees were negligent.  Thus, according to TriState, the USA's sovereign immunity argument does not apply.

TriState then maintains that its allegations are sufficient to state a claim because it has alleged that USA employees were negligent and has argued that a specific employee, Ms. Carter, breached her duty to "[f]urnish direct technical assistance and guidance to the contractor through all aspects of the contract."  (Pl.'s Ex. B at Doc. No. 77-2).

As to USA's Rule 14 argument, TriState alleges and argues that it and the USA are indeed joint tortfeasors and thus contribution could be proper.  TriState does not advance an argument in support of its claim for indemnification.

Finally, TriState contends that dismissal at this stage of litigation would be premature. TriState argues that discovery, such as a deposition of Ms. Carter, is warranted to explore the liability of the USA.

IV.   **Legal Discussion**

   A.   **Legal Standard**

USA moves to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), and for failure to state a claim, pursuant to Rule 12(b)(6). The standards differ. On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuading the Court that subject matter jurisdiction exists. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991). In determining whether the plaintiff has met its burden on a factual attack of subject matter jurisdiction, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Mortensen v. First Federal Savings and Loan Association, 549 F.2d 884, 891 (3d Cir. 1977). Moreover, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id.

However, when deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994). A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff. Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).

   B.   **Subject Matter Jurisdiction**

As noted above, USA argues that this Court lacks subject matter jurisdiction to hear

TriState's claims against the USA because the USA is immune from liability for the negligence of its contractors. In making this argument, USA appears to misunderstand TriState's allegations against it. TriState brings a third-party claim against USA alleging that USA's employees were negligent, not that USA's contractors were negligent. USA's argument that it is immune from liability for the negligence of its contractors is thus irrelevant – it is not being sued for the negligent acts and omissions of its contractors, but for its own alleged negligent acts and omissions. See Compl. ¶¶ 68-73.

The Court finds that it has subject matter jurisdiction over this dispute. TriState has brought negligence claims against the United States, asserting that USA employees were negligent. Such claims are proper because the Federal Tort Claims Act ("FTCA") waived the United States' sovereign immunity for torts committed by its employees acting within the scope of their employment. 28 U.S.C. § 1346(b). Here, TriState alleges that the USA, through its agent USPS, was negligent and that USPS employees, specifically Ms. Carter, were negligent when acting within the scope of their employment. See Compl. ¶¶ 72-73; Pl.'s Opp'n Brief pp. 6-7. Because of the FTCA, USA has waived sovereign immunity in this case and the Court has subject matter jurisdiction to hear TriState's claim.

It is perhaps useful here also to address one of USA's final arguments – that presumptive truthfulness does not attach to TriState's allegation that the USA directed TriState where to drill. (Def.'s Brief, p. 17). In support of this argument, USA cites to Mortensen v. First Federal Savings and Loan Associate, 549 F.2d 884, 891 (3d. Cir. 1977), which clarifies the difference between various 12(b) standards. Mortensen addresses the standards for 12(b)(1) motions that factually attack subject matter jurisdiction, 12(b)(1) motions that facially attack subject matter

jurisdiction, and 12(b)(6) motions to dismiss for failure to state a claim.[4]  When a court considers a factual attack on subject matter jurisdiction, the standard, as noted above and as set forth in Mortensen, supra, permits the court to evaluate facts relevant to subject matter jurisdiction.  See also 5 C Wright and A. Miller, Federal Practice and Procedure § 1350 (1969).  Presumably, USA argues that it factually attacks subject matter jurisdiction and that this Court should therefore not view TriState's allegation that the USA directed it where to drill in the light most favorable to TriState, the third-party plaintiff.

However, not all facts are jurisdictional facts.  When a party such as USA presents both a 12(b)(1) attack on subject matter jurisdiction and a 12(b)(6) attack on the merits, the facts can be relevant to either attack, and occasionally to both.  When evaluating the facts relevant to jurisdiction, the court does not attach presumptive truthfulness to the allegations.  Id.  However, when facts are not jurisdictional, but go to the merits, the Court does not evaluate them, but instead presumes them to be truthful.  Angelastro, 764 F.2d at 944.

Here, whether USA directed TriState where to drill is a fact relevant to the allegations of negligence, in other words, to the merits.  Thus, pursuant to the Rule 12(b)(6) standard, TriState's allegations that USA directed TriState where to drill must be viewed in the light most favorable to TriState and presumptive truthfulness indeed attaches.

**C.    Rule 14**

The parties also dispute the applicability of Rule 14, F. R. Civ. P., and whether TriState's

---

[4] Mortensen uses the term "factual attack" for challenges to subject matter jurisdiction that dispute the facts which allegedly provide the basis for subject matter jurisdiction.  In contrast, according to Mortensen, when a party "facially attacks" subject matter jurisdiction, the alleged jurisdictional facts are undisputed.

Amended Complaint against USA is proper. Rule 14 provides that a third party complaint may be "served upon a person not a party to the action who is or may be liable to the third party plaintiff for all or part of the plaintiff's claim against the third party plaintiff." There is no controlling precedent by the Supreme Court or the Third Circuit, and the district courts have taken a wide range of approaches to allowing third party complaints. See Harmelin v. Man Financial Inc., 2007 WL 3085867, at *2-*3 (E.D. Pa.) (October 17, 2007).

USA cites to cases such as FHF Partners v. KMA Financial Group, LLC, 2007 WL 710287 (E.D. Pa. March 5, 2007), which set out that third-party claims may only be brought when a third-party defendant is alleged to be liable to the third-party plaintiff, not when the third-party defendant is alleged to be liable to the main plaintiff. TriState does not directly address USA's Rule 14 argument, but indirectly addresses it by arguing that TriState and USA could be joint tortfeasors. Under Pennsylvania law, if parties are joint tortfeasors, one may join the other and assert a claim for contribution. See Foulke v.Dugan, 212 F.R.D. 265, 269-270 (E.D. Pa. 2002). It appears that TriState takes the position that it properly joined USA because it and USA could be joint tortfeasors, which would justify its claim for contribution against USA. However, TriState also asserts a claim for indemnification and does not cite law or provide argument in support of this claim. Contribution and indemnification claims require distinct analyses and the court will address each in turn.

    **1.**    **Contribution**

A claim for contribution is only proper under Pennsylvania law when it arises between joint tortfeasors. See Foulke, 212 F.R.D. at 270 (quoting Kemper Nat'l P & C Cos. v. Smith, 615 A.2d 372, 380 (Pa. Super. 1992)). Joint tortfeasors are "two or more persons jointly or

severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." 42 Pa.C.S. § 8322.  "Under Pennsylvania law, two actors are joint tortfeasors if their conduct 'causes a single harm which cannot be apportioned . . . even though [the actors] may have acted independently." Rabatin v. Columbus Lines, Inc., 790 F. 22, 25 (3d Cir. 1986) (quoting Capone v. Donovan, 480 A.2d 1249, 1251 (Pa. Super. 1984)).

Here, TriState asserts that it and USA are joint tortfeasors.  TriState claims that although it conducted the drilling, USA directed it where to drill.  Compl. ¶ 19.  TriState also argues that USA's employee, Ms. Carter, negligently omitted material facts that caused the reasonable belief that drilling would be appropriate at the location where it occurred.  Pl.'s Opp'n Brief, p. 10.  TriState contends that "if TriState should be found negligent, the USA should be found equally, if not more, negligent."  Pl.'s Opp'n Brief, p. 10.  Given these allegations, this Court finds that at this stage of the litigation, TriState and USA qualify as joint tortfeasors and the damages allegedly caused by the drilling could not be apportioned if they were both found to be negligent.  As noted above, under Pennsylvania law, if parties are joint tortfeasors, they can properly assert a claim against one another for contribution.  TriState has done so here.

**2.     Indemnification**

"Unlike contribution . . . indemnification shifts the entire loss from one party to another." Richardson v. John F. Kennedy Memorial Hosp., 838 F. Supp. 979, 989 (E.D. Pa. 1993).  Under Pennsylvania law, "indemnity is available only under the following circumstances:  (1) where primary versus secondary or vicarious liability is present or (2) where there is an express contract to indemnify."  Id.  TriState does not allege that it and USA had a contract providing for indemnification, thus for TriState to be indemnified, some secondary or vicarious liability must

be present. USA argues that there is no direct relationship between USA and TriState in order to form the basis for this secondary or vicarious liability. USA cites to <u>Builders Supply Co. v. McCabe</u>, 77 A.2d 368, 371 (Pa. 1951), which explains that secondary or vicarious liability "depends on a difference in the *character* or *kind* of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person. Secondary liability exists, for example, where there is a relation of employer and employee, or principle and agent." <u>Id</u>. at 370.

TriState has not alleged that it is in a relationship with USA whereby USA would be secondarily or vicariously liable to TriState. Thus, the Court can not find that TriState states a claim for indemnification. See <u>Harmelin v. Man Financial Inc.</u>, 2007 WL 2932866, at *5 (E.D. Pa.) (October 2, 2007). USA's motion to dismiss will be granted with respect to the indemnification claim.

### D. Delegation of the Duty of Care

USA argues that, by contracting with URS, it "appropriately satisfied whatever duty it may have owed to TriState, a subcontractor, by providing in the Contract that the contractor, URS, would be responsible for locating underground obstructions to the drilling." Def.'s Brief, p. 14. In support of this argument, USA cites to <u>Bloom v. Waste Management, Inc.</u>, 615 F. Supp. 1002 (E.D. Pa. 1985). It is important to note that <u>Bloom</u> addressed a motion for summary judgment, not a motion to dismiss, and therefore analyzed a developed factual record. <u>Id</u>. at 1006. ("The factual predicate for the Government's motion is supplied by the contract between the [parties], an outline of [one party's] worker safety program, and various affidavits and depositions submitted by the parties.") The court in <u>Bloom</u> based its ruling on its view of the

facts presented to it. Presently before this Court is a motion to dismiss, and an undeveloped factual record. USA's reliance on Bloom is misplaced.

USA also cites to another case that does not involve the motion to dismiss standard, the Pennsylvania case of Brletich v. United States Steel Corp., 285 A.2d 133 (Pa. 1971). In the part of Brletich that addresses the landowner's liability, the Supreme Court of Pennsylvania affirms the lower court's entering of nonsuit. A judgment of nonsuit is entered after the parties submit their evidence. As with summary judgment, a judgment of nonsuit is entered when the factual record is developed. The findings in Brletich were based on a knowledge of the facts that this Court simply does not have at this stage of litigation.

As noted above, at this stage of litigation, this Court evaluates whether TriState has stated a claim, and in doing so, the Court is obligated to view TriState's allegations in the light most favorable to TriState. TriState has alleged that USA, through USPS employees, should have known the location of the underground cables, Compl. ¶ 17, and that USPS employees directed TriState where to drill, Compl. ¶ 19. Given the principles of notice pleading, these allegations support TriState's claim for Neligence. If the USA wishes the Court to view the allegations otherwise, the USA will need to develop the factual record, as was done in both Brletich and Bloom.

**V.    Conclusion**

For the reasons stated above, this Court denies the USA's motion to dismiss for lack of subject matter jurisdiction as well as USA's motion to dismiss on the merits. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK), : | |
| : | |
| Plaintiff, : | |
| v. : | |
| : | |
| URS CORPORATION, et al., : | |
| : | CIVIL ACTION |
| Defendants, : | |
| : | No. 05-4175 |
| and : | |
| : | |
| TRISTATE ENVIRONMENTAL MANAGEMENT SERVICES, INC., improperly impleaded as TRISTATE ENVIRONMENTAL SERVICES, INC. t/a TRISTATE PROBING & DRILLING, INC., : | |
| : | |
| Defendant/Third-Party Plaintiff, : | |
| v. : | |
| : | |
| KBN GENERAL CONTRACTING, et al., : | |
| : | |
| Third-Party Defendants. : | |

**<u>ORDER</u>**

And NOW, this 21st day of November, 2007, for the reasons stated in the foregoing Memorandum, it is hereby ORDERED that the Motion of the United States of America to Dismiss the Amended Third-Party Complaint (Doc. No. 74) is GRANTED as to the Indemnification claim, but otherwise DENIED.

BY THE COURT:

/s/ Michael M. Baylson
Michael M. Baylson, U.S.D.J.

A:\05-4175 MTD 3d party complaint.wpd