# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NATIONAL RAILROAD PASSENGER
CORPORATION (AMTRAK),

       Plaintiff,

   v.

URS CORPORATION; URS GROUP, INC.; TRISTATE
ENVIRONMENTAL MANAGEMENT SERVICES,
INC. t/a TRISTATE ENVIRONMENTAL SERVICES,
INC. t/a TRISTATE PROBING & DRILLING, INC.; and
JOHN DOE 1-10 (a fictitious name); and ABC
CORPORATION 4-10 (a fictitious name),

       Defendants,

   and

TRISTATE ENVIRONMENTAL MANAGEMENT
SERVICES, INC., improperly impleaded as
TRISTATE ENVIRONMENTAL MANAGEMENT
SERVICES, INC. t/a TRISTATE ENVIRONMENTAL
SERVICES, INC., t/a TRISTATE PROBING &
DRILLING, INC.,

       Defendant/Third-Party
       Plaintiff,

   v.

KBN GENERAL CONTRACTING; JOSEPH C.
COLLACHI; ABC CORPORATION 1-10 (a fictitious
name); JOHN DOE 1-10 (a fictitious name) and the
UNITED STATES OF AMERICA,

       Third-Party Defendants.

CIVIL ACTION

No. 05-4175

**FILED**

JUN 1 0 2008

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

-1-

**MEMORANDUM RE: CROSS MOTIONS FOR SUMMARY JUDGMENT ON
TRISTATE'S THIRD-PARTY CLAIM AGAINST THE UNITED STATES**

Baylson, J.                                                      June 10, 2008

## I.       Introduction

This case involves an allegedly negligent drilling project on federal property which

damaged underground cables owned by National Railroad Passenger Corporation ("Amtrak").

The parties dispute who should bear the responsibility for the damage.  One defendant, Tristate

Environmental Management Services, Inc. ("Tristate"), conducted the actual drilling and is the

only Third-Party plaintiff.  Tristate brought a third-party claim for negligence against the

landowner, the United States of America ("USA"),[1] and presently at issue are cross-motions for

Summary Judgment on that claim, filed by the USA and Tristate (Doc. Nos. 99 and 101).[2]

## II.      Factual Background

The drilling in this case was part of an environmental project designed to prepare the

USA's property for sale.  The Court draws the following facts from the briefs, documents and

deposition transcripts submitted by the parties.

           A.       The Respective Roles of URS, Tristate, and the USA

The USA contracted with URS Corporation and URS Group, Inc. (collectively, "URS")

to obtain URS's project management and environmental consulting services.  URS's Project

---

[1] The property at issue was United States Postal Service ("USPS") property.  The parties
do not dispute that the USPS is an agent of the USA, and the Court therefore attributes USPS's
actions to the USA.

[2] Tristate's Partial Motion for Summary Judgment (Doc. No. 101) also moves for
summary judgment on Tristate's claims against its co-defendants URS Corporation and URS
Group, Inc. (collectively "URS") as well as Tristate's claims against Plaintiff Amtrak.  Tristate's
Motion with respect to these claims will be addressed in a subsequent memorandum.

Manager was Byron Nickerson, who was experienced in environmental remediation and who had managed approximately 300 jobs for the USA prior to the drilling project at issue. One of URS's primary tasks was to install groundwater monitoring wells: three wells in the vehicle maintenance facility (VMF) garage and five wells on part of the property known as the VMF "Body Shop." Approximately 90% of the "Body Shop" is a parking lot, and two of the five Body Shop wells were to be installed in that parking lot.

URS subcontracted the actual drilling work to Tristate, and Theodore Sobieski, as Project Coordinator, was in charge of Tristate's drilling operations. In his deposition, Mr. Sobieski stated that he assumed underground utilities would not be a problem because URS would have told him if they presented a problem. Sobieski Dep. at 53, Def.'s Mot. Ex. 6.

The USA, as the landowner, designated its employee Ann Carter to be the Contracting Officer's Representative ("COR") for the project, and the nature of her role is a significant point of contention. Ms. Carter's title was "Area Environmental Specialist," and according to the memorandum designating her as COR, her responsibilities included "monitor[ing] the project" and "furnish[ing] direct technical assistance and guidance to the contractor through all aspects of the contract." Def.'s Mot. Ex. 4. The parties dispute, however, what such language means, what Ms. Carter's responsibilities actually entailed, and what legal duties Ms. Carter's responsibilities conferred on the USA.[3]

---

[3] Ms. Carter has explained that she understood her role to consist of "act[ing] as liaison between the contracting officer and the contractor and . . . monitor[ing] the project after it is awarded and report[ing] back anything that arises as a result of the contractor working within the scope that's not being done accordingly to the way it was laid out." Carter Dep. at 67-68, Def.'s Mot. Ex. 5. Ms. Carter stated that the technical aspects of her job involved "mak[ing] sure that the project didn't interfere with any type of postal operations and [making] sure that nothing that was being done as far as the postal service interfered with what the contractor was doing and

It is undisputed that Ms. Carter was present when Tristate began the drilling that hit Amtrak's subsurface utility duct. Moreover, according to a URS internal memorandum, Ms. Carter "was present during all preparation and all field activities." Pl.'s Resp. Ex. J at 1. When Mr. Nickerson was asked to describe Ms. Carter's role when she was "out at the site," he stated that she was "just spectating [sic], you know, and sort of running interference for, like if we needed access to something or getting in and out of the gate, you know, she was able to get us in and out of the gate. That sort of thing." Nickerson Dep. at 140-141, Def.'s Ex. 7.

B.    Amtrak's Easement

The parties do not dispute that Amtrak had an easement onto the USA's property for its underground duct bank of communication and signal cables. However, URS and Tristate were not aware of the easement prior to the August 7, 2003 drilling, and the parties dispute whether the USA had a duty to inform URS and Tristate of this easement.[4]

The USA made some plans available to URS prior to the drilling at issue. On July 2, 2003, Mr. Nickerson met with Ms. Carter to review all drawings available for the site with the objective of identifying sub-surface utilities. Pl.'s Resp. Ex. J at 1; Carter Dep. at 45 (Def.'s Mot. Ex. 5.) Mr. Nickerson contends he requested that the USA provide him with all the relevant information that would enable him to complete the project without incident, Def.'s Mot. Ex. 3 at 15-16; however, Mr. Nickerson did not specifically ask the USA for the deed to the

---

[providing] whatever help [she] could from the postal service . . . to make sure that the project went according to the scope of work." Id. at 68.

[4] As discussed in greater detail below, Tristate contends that the USA knew that the Amtrak cables were there prior to the August 7, 2003 drilling and submits a letter in support of this contention.

property.  Although Amtrak's easement is recorded on the deed, the Amtrak cables at issue were

actually located outside of the easement as recorded on the deed.  As a result, the parties dispute

the relevance of the deed and what Mr. Nickerson would have done had he seen the deed prior to

drilling.

       C.     The Drilling and the Damage

On August 7, 2003, Tristate was setting up its drilling location[5] when an Amtrak

employee (identity unknown) approached and asked Ms. Carter if she was aware of underground

wiring in the vicinity.  Carter Dep. at 64, Def.'s Mot. Ex. 5.  The Amtrak employee also said that

a different recent drilling project had missed the conduit by two feet but that drilling should be

fine at the location Tristate had set up.  Id. at 64-65.  Ms. Carter relayed the Amtrak employee's

comments to Mr. Nickerson.  Id.  The drilling began in the location where it had been set up, hit

Amtrak's underground cables, and caused the damages that give rise to this lawsuit.

**III.    Procedural History**

Plaintiff Amtrak filed its Complaint (Doc. No. 1) on August 4, 2005, against URS

Corporation and URS Group, Inc. (collectively "URS"), Tristate, ABC Corporation and John

Doe.  Tristate filed a cross-claim against URS (Doc. No. 6) as well as a Third-Party Complaint

against the United States Postal Service ("USPS") and others (Doc. No. 15).  Tristate's claim

against USPS was dismissed (Doc. No. 50) but on July 12, 2007, Tristate received permission to

amend its third-party complaint to add the USA as a defendant (Doc. No. 59).  The USA moved

---

    [5] The exact well locations were determined, in part, based on areas "marked out" by
another subcontractor, KBN General Contractors ("KBN"), to indicate the presence of
underground utility cables and conduits.  However, according to the deposition testimony of
Joseph Collachi, a KBN employee, KBN did not place "mark outs" in the Body Shop parking lot,
where the drilling at issue occurred.  Collachi Dep. at 101, Pl.'s Mot. Ex. G.

to dismiss the Amended Complaint, and on November 21, 2007, the Court granted the USA's

Motion to Dismiss as to the indemnification claim, but otherwise denied it (Doc. No. 81).

After a period of discovery, the USA moved for summary judgment on Tristate's

negligence claim against it (Doc. No. 99). Tristate responded on April 7, 2008 (Doc. No. 102),

and USA filed a reply on April 16, 2008 (Doc. No. 106). Tristate has also moved for summary

judgment as to its claim for negligence against the USA (Doc. No. 101). The USA responded on

April 14, 2005 (Doc. No. 105).

## IV.     Parties' Contentions

### A.     USA

The USA first argues that discovery has not revealed evidence to support Tristate's

allegations that USA employees were negligent. USA contends that Tristate has therefore

abandoned the allegations of negligence it had set forth in the Complaint.

The USA then argues that it did not have a duty, as the property owner, to discover the

location of the underground utilities. According to the USA, Ms. Carter's role in the drilling

project was that of a facilitator and spectator, and she had no responsibilities regarding the

location of underground utilities. The USA asserts that any negligent acts or omissions of URS

can not be attributed to it, since URS is an independent contractor of the USA.[6] The USA

designates the URS project manager, Mr. Nickerson, as the party responsible for locating the

underground utilities, and argues that Ms. Carter's role as COR did not affect Mr. Nickerson's

---

[6] Despite the USA's argument, it does not appear that Tristate attributes URS's negligence to the USA, but sues the USA for its own negligent acts and omissions. See this Court's discussion in its Memorandum dated November 21, 2007 (Doc. No. 81), which denies the USA's Motion to Dismiss except as to Tristate's Indemnification claim, and see discussion, infra.

responsibility.

According to the USA, its role as landowner, by itself, is insufficient to confer liability for any damages caused by the drilling.  The USA contends that it did not owe a duty to Tristate and/or URS because it was not in the better position to discover the underground utilities.  The USA argues that Tristate and/or URS were actually in the better position to discover the utilities given that they had expertise with drilling.[7]  The USA asserts that Tristate should have ensured that the appropriate investigation into underground utilities had been conducted because Tristate knew that underground utilities were a possible hazard.  The USA relies on the deposition of Theodore Sobieski, Tristate's Project Coordinator, in which Mr. Sobieski stated that an adjacent railroad would constitute a "red flag" as to the existence of underground utilities.  (Def.'s Ex. 6, pp. 51-52.)[8]

The USA also contends that it did not owe a duty to URS and/or Tristate because URS and Tristate in fact created the dangerous condition on the USA's property.  Finally, the USA again argues that because it hired independent contractors, it is protected from findings of negligence.

**B.     Tristate**

Tristate asserts that the USA ignores the body of law which sets forth the duties a

---

[7] As discussed in greater detail below, the USA glosses over Tristate's contention that the USA already knew of the underground utilities.  See Def.'s Resp. at 5.  Tristate's contention is relevant since if USA knew of the utilities, the proper inquiry is not which party could better "discover" the utilities, but whether the USA had critical information that the other parties did not have.

[8] All citations noting the Defendant refer to USA, the Third-Party Defendant.  All citations noting the Plaintiff refer to Tristate, the Third-Party Plaintiff.

landowner has to warn independent contractors of known or discoverable dangerous conditions on the landowner's property.  In responding to the USA's motion, Tristate contends that the dispute over Ms. Carter's role is a dispute as to a material fact.  According to Tristate, when the USA contractually assigned Ms. Carter to "monitor the project" and "furnish direct technical assistance to URS through all aspects of the contract," it accepted the duty of carrying out these tasks in a careful and competent manner.

Tristate states that it is undisputed that the USA knew of Amtrak's easement prior to the August 7th drilling.  In support its position, Tristate submitted a letter dated May 13, 2003, from a USA employee to an Amtrak employee, discussing Amtrak's easement.  (Pl.'s Ex. H.)  Via the letter, the USA provided Amtrak with documentation regarding the Amtrak easement and stated that it was doing so in anticipation of the sale of the USA property.  (Id.)  Tristate argues that the USA should have provided this same information to URS and/or Tristate.  Tristate also claims that the USA should have provided URS and/or Tristate with a copy of the deed to its property, since the deed notes Amtrak's easement.   Tristate disputes the USA's contention that the deed is irrelevant since the utility duct is located outside of Amtrak's easement as recorded on the deed. Tristate argues that this argument fails because Mr. Nickerson stated, at his deposition, that URS would have been able to locate the duct bank even if it was not within Amtrak's easement.  (Pl.'s Resp. 8, citing Pl.'s Ex. M.)

Tristate then argues that the USA is liable to Tristate for failing to share information that would have prevented trespass onto Amtrak's property or the creation of a public or private nuisance.  According to Tristate, since the USA knew of Amtrak's easement it knew or should have known that the drilling would cause a trespass or nuisance.

-8-

Tristate seeks contribution from the USA and argues that if it is found negligent, the USA is also negligent for failing to share the knowledge it possessed of the Amtrak underground cables.[9]

## V.      Legal Standard

The standards by which a court decides a summary judgment motion do not change when the parties file cross-motions.  Southeastern Pa. Transit Auth. v. Pennsylvania Pub. Util. Comm'n, 826 F. Supp. 1506, 1512 (E.D. Pa. 1993).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325.  After the moving party has met its initial burden, "the

---

[9] In its Third-Party Complaint, Tristate had alleged that USA employees directed Tristate where to drill.  However, Tristate has not submitted evidence in support of this claim.

adverse party's response, by affidavits or as otherwise provided in this rule, must set forth

specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  Summary

judgment is appropriate if the non-moving party fails to rebut by making a factual showing

"sufficient to establish the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Under Rule 56, the

Court must view the evidence presented on the motion in the light most favorable to the

opposing party.  Anderson, 477 U.S. at 255.

## VI.    Discussion

At issue is Tristate's third-party claim against the USA for negligence, and both parties

have filed motions for summary judgment.  Tristate takes the position that if it is found negligent,

the USA was contributorily negligent as a joint tortfeasor.  The USA contends it was not

negligent and therefore should not be liable for any of the damages at issue.  The Court finds that,

based on the evidence presented and for the reasons stated below, a reasonable jury could or

could not find the USA negligent.  As a result, both motions for summary judgment will be

denied.  See Anderson, 477 U.S. at 248.

### A.    Negligence

Under Pennsylvania law, a claim for negligence requires four elements:

(1) a duty or obligation recognized by the law, requiring the actor to conform to a
certain standard of conduct for the protection of others against unreasonable risks;
(2) a failure to conform to the standard required; (3) a causal connection between
the conduct and the resulting injury; and (4) actual loss or damage resulting in
harm to the interests of another.

Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 139 (3d Cir. 2005).  Tristate's negligence

claim is based on the notion that the USA had a duty to inform URS and/or Tristate of Amtrak's

-10-

underground cables, that the USA breached its duty, and that the breach caused, at least in part, the damages to Amtrak's cables which precipitated the instant lawsuit.

A landowner owes a duty to warn an unknowing independent contractor of existing dangerous conditions on the premises where such conditions are known or discoverable to the owner. See Mentzer v. Ognibene, 597 A.2d 604, 612 (Pa. Super. Ct. 1991). A landowner does not have such a duty to inform if the dangers are as obvious to the contractors as they are to the landowner. Id. A landowner's "duty to warn is owed irrespective of whether the independent contractor exercises full control over the work and premises entrusted to him." Colloi v. Philadelphia Electric Co., 481 A.2d 616, 619-620 (Pa. Super. 1984).

It is important to note that, generally, questions of negligence are most appropriate for a fact finder. Colloi, 481 A.2d at 621 ("As a general rule, questions of negligence or neglect of duty are for the jury if there is any credible evidence to support a reasonable conclusion that the defendant is liable;").

**B.      The USA's Motion**

**1.      Allegations of Negligence**

The USA first argues that Tristate has abandoned its allegations that USA employees were negligent because Tristate did not uncover, in discovery, a factual basis for alleging that the USA directed Tristate where to drill or that the USA negligently hired URS. However, Tristate does not appear to have actually abandoned its allegations of negligence, especially since it too has filed a motion for summary judgment.

While it is true that Tristate has not submitted evidence to support all the allegations of negligence in the Complaint, Tristate has submitted, inter alia, a letter dated May 13, 2003,

-11-

indicating that USA employees did in fact know of Amtrak's easement and suggesting that the USA was in possession of additional information regarding the underground utility duct. A reasonable jury could thus conclude that the USA was negligent in omitting to inform URS and/or Tristate of Amtrak's easement, and the Court does not find that Tristate has abandoned its allegations of negligence.

### 2.    Independent Contractors

The USA next raises an argument that this Court has previously addressed – that the USA can not be liable for the negligence of its independent contractors under the Federal Tort Claims Act (FTCA). Defendant labels this argument its independent contractor defense. However, as the Court pointed out when denying the USA's Motion to Dismiss (except as to Tristate's indemnification claim), "USA's argument that it is immune from liability for the negligence of its contractors is thus irrelevant – it is not being sued for the negligent acts and omissions of its contractors, but for its own alleged negligent acts and omissions." National Railroad Passenger Corp. v. URS, 528 F. Supp. 2d, 525, 530 (E.D. Pa. 2007).

The FTCA provides that the USA is liable to the same extent as a private party for injuries that are "caused by the negligent or wrongful actor omission of any employee of the Government while acting withing the scope of his office or employment . . ." 28 U.S.C. § 2671. See also  Logue v. U.S., 412 U.S. 521, 532-33 (1973) (explaining the difference between negligence on the part of the USA and negligence on the part of a contractor for the USA). Here, Tristate argues that the USA's own employees were negligent for, inter alia, not informing Tristate and/or URS of Amtrak's underground cables. The independent contractor defense is of

-12-

little relevance for present purposes.[10]

### 3.   USA's Duty as Landowner

The USA argues that it did not owe a duty to Tristate because Tristate and URS, given

their expertise with drilling projects, were in a better position to discover the underground

utilities.  This argument fails because it ignores the knowledge component of the analysis and

focuses purely on the discovery component.  A landowner's duty to inform is triggered by

knowledge of the hazard <u>or</u> by being in a superior position to discover the hazard.  <u>Colloi</u>, 481

A.2d at 619.  In other words, if the landowner knows of a non-obvious hazard, the landowner

owes a duty to warn, regardless of who is in a better position to discover the hazard.

Tristate has submitted evidence, in the form of a letter dated May 13, 2003, in which a

USA employee writes to an Amtrak employee,

> I have enclosed all of the information I could locate regarding the Amtrak
> easement on our property at 30th Street.  I will be meeting with a postal attorney
> on Wednesday, May 14 to discuss this matter.  This particular individual has a
> long history with this project and might be able to provide some additional insight
> into the issue.

---

[10] The USA's reliance on <u>Wilson v. MVM, Inc.</u>, 2004 WL 765103 (E.D. Pa. April 1, 2004), to claim that Ann Carter's role as COR does not impair the independent contractor defense, is misplaced and illustrates the confusion.  <u>Wilson</u> involved determining whether employees of a federal government contractor qualified as federal government employees.  <u>Wilson</u> applied the thirteen-factor test set forth in <u>Community for Creative Non-Violence v. Reid</u>, 490 U.S. 730 (1989), and one of the factors required the Court to determine whether the federal government controlled the independent contractor.  The Court in <u>Wilson</u> found that it did not, despite the existence of Contracting Officer's Technical Representative, whom the USA presumably compares to Ms. Carter.  "[H]iring parties may have representatives who oversee the work of independent contractors, without transforming the independent contractors into 'employees' of the hiring party."  <u>Wilson</u>, 2004 WL 765103 at *4.  The present issue, however, is not whether URS and Tristate qualify as employees of the USA or whether USA controlled URS or any of the other parties.  The issue is whether the USA itself had a duty to provide information to Tristate that it failed to provide.  <u>Wilson</u> is not enlightening on that point.

Pl.'s Br. Ex. M.  A jury could reasonably conclude that this language indicates that the USA

knew of Amtrak's underground utilities prior to the August 7, 2003 drilling.  In response, the

USA does not deny that it knew of the underground utilities prior to the drilling, but instead

focuses its argument on which party was in a better place to discover them.

   If the USA knew of Amtrak's underground utilities, and a jury could reasonably conclude

that it did, the jury could find that the USA owned and breached a duty to inform URS and/or

Tristate of the utilities.  See Best Products Co. v. A.F. Callan and Co., Inc., 1997 WL 83737, at

*12 (E.D. Pa. Feb. 26, 1997) ("Whether the owner is required to have warned an independent

contractor will hinge on whether the owner, at the time of contracting, possesses information as

to a dangerous condition superior to that of the contractor or its employees.")  The Court is

therefore not persuaded by the USA's arguments regarding discovering the utilities.

### 4.    Joint Tortfeasor Principles

   Even if URS and Tristate were themselves negligent, the USA could also be found

negligent under the principle of tort law whereby parties can be joint tortfeasors, each

contributing in some way to the eventual damages.  It is Tristate's position that the USA did not

provide URS with the information necessary to locate the underground utilities, and indeed

Tristate specifically seeks contribution, arguing that should it be found negligent, the USA would

also be negligent as a joint tortfeasor.

   Pennsylvania law permits a negligent actor to seek contribution from a joint tortfeasor.

See Pennsylvania Uniform Contribution Among Joint Tortfeasors Act, 42 Pa.C.S.A. § 8324.

"The right of Contribution exists only between joint tortfeasors.  Contribution distributes the loss

equally or each joint tortfeasor pay[s] his or her pro rata share."  Lasprogata v. Qualls, 263 Pa.

-14-

Super. 174, FN 2 (1979) (holding that a negligent driver causing the initial injury and a negligent physician aggravating the injury later on through malpractice are not joint tortfeasors).[11]

A relevant case is <u>Rabatin v. Columbus Lines, Inc. et. al.</u>, 790 F.2d 22 (3d Cir. 1986), an appeal from a jury verdict deeming both defendants joint tortfeasors when one defendant was found liable on a theory of strict liability and the other was found liable for negligence.  Relying on its prior opinion in <u>Chamberlain v. Carborundum Corp.</u>, 485 F.2d 31 (3d Cir. 1973), which had upheld a finding that two defendants were joint tortfeasors "because they both could have guarded against each other's conduct and thereby prevented the employee's death," <u>Rabatin</u>, 790 F.2d at 26, the Court affirmed the verdict in the <u>Rabatin</u> case that both defendants were joint tortfeasors.  The following language, in the present factual context, would allow a jury to find that USA and Tristate were joint tortfeasors.

> Applying these principles, we conclude that Columbus and Union Carbide are joint tortfeasors.  Each had the opportunity to prevent Rabatin's injuries.  Union Carbide *could have* refrained from marketing a defective product, and Columbus *could have* taken appropriate precautions prior to the accident when it first learned that the eyebolts were cracking.  Moreover, each of the tortfeasor's acts combined to produce a single, indivisible harm.  It would be impossible to apportion Rabatin's harm between them.

---

[11] A clear definition of "joint tortfeasors" is found in <u>Voyles v. Corwin</u>, 441 A.2d 381, 383 (Pa. Super. 1982).

> In determining whether the harm to a plaintiff is capable of apportionment, that is, whether the defendants are separate or joint tortfeasors, courts consider several factors: the identity of a cause of action against each of two or more defendants; the existence of a common, or like duty; whether the same evidence will support an action against each; the single, indivisible nature of the injury to the plaintiffs; identity of the facts as to time, place or result; whether the injury is direct and immediate, rather than consequential, responsibility of the defendants for the same injuria as distinguished from damnum.

(Citing Prosser, Law of Torts, § 46 n. 2, (4th ed. 1971)).

Rabatin, 790 F.2d at 26 (emphasis added).  Given the evidence submitted, it would be reasonable for a jury to conclude that the USA could have prevented the drilling damages in this case by informing Tristate of the Amtrak easement, and to further conclude that if Tristate is found liable, the USA can also be found liable as a joint tortfeasor.  This issue is appropriate for a fact-finder, Colloi, 481 A.2d at 621, and the USA's Motion for Summary Judgment will therefore be denied.

### C.    Tristate's Motion

Tristate filed a Motion for Partial Summary Judgment (Doc. No. 101) which addresses Tristate's third-party claims against Amtrak, URS, and the USA.[12]  Tristate does not cite to any law in support of its motion as to the USA.  See Pl.'s Br. at 11-12.  Tristate argues that the USA should have provided URS with the information in the letter dated May 13, 2003 (Pl.'s Br. Ex. M, discussed above), as well as with the deed to the USA's property.  Tristate also relies on Mr. Nickerson's Deposition[13] to contend that if the USA had given Mr. Nickerson a copy of the deed, he would have been likely to locate Amtrak's underground utility duct even though the duct was not exactly within Amtrak's easement.

The Court finds that Tristate has not met its burden under the summary judgment standard.  As discussed above, to prevail on summary judgment, Tristate must illustrate that there are no genuine issues of material fact, and that it is entitled to a judgment as a matter of law.

---

[12] Tristate incorrectly refers to Third-Party Defendant the USA as the USPS.  See Doc. No. 50 (Order dismissing the USPS as a party) and Doc. No. 59 (Tristate's Amended Third-Party Complaint).  As noted in footnote 1, the Court attributes the USPS's actions to the USA.

[13] Specifically, Tristate relies on Nickerson Dep., Pl.'s Br. Ex. O., at pp. 128-136, lines 12-19. See Pl.'s Br. at 12.

Especially since Tristate has not cited to any law, the Court can not discern the contours of Tristate's argument that it deserves judgment as a matter of law.

Furthermore, the Court would like to point out that the USA disputes Tristate's characterization of Mr. Nickerson's deposition testimony regarding what he would have done had he seen the deed prior to the drilling at issue. Such a dispute is genuine and material because it could affect a reasonable fact finder's analysis of causation in this case, and it further illustrates how Tristate has not met its burden under the summary judgment standard.

**VII.   Conclusion**

For the foregoing reasons, both parties' motions for summary judgement will be denied. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NATIONAL RAILROAD PASSENGER            :      CIVIL ACTION
CORPORATION (AMTRAK)                   :
                                       :
            v.                         :
                                       :
URS CORPORATION, et al.                :      No. 05-4175

**ORDER**

**FILED**
JUN 1 0 2008
MICHAEL E. KUNZ, Clerk
By _____ Dep. Clerk

AND NOW, this 10th day of June, 2008, upon consideration of Third-Party

Defendant the United States of America's Motion for Summary Judgment (Doc. No. 99), it is

hereby ORDERED that the Motion is DENIED.

Upon consideration of Third-Party Plaintiff Tristate's Motion for Partial Summary

Judgment (Doc. No. 101), it is hereby ORDERED that the Motion is DENIED as to Tristate's

claims against the United States of America.  Tristate's claims against other Third-Party

Defendants will be addressed in a later order.

**ENTERED**
JUN 1 1 2008
CLERK OF COURT

BY THE COURT:

_____
Michael M. Baylson, U.S.D.J.

O:\Kathy\05-4175 Amtrak v. URS\05-4175 MSJ Third Party Complaint.wpd

-18-