IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK), | : : : | |
| Plaintiff, | : : | |
| v. | : : | |
| URS CORPORATION; URS GROUP, INC.; TRISTATE ENVIRONMENTAL MANAGEMENT SERVICES, INC. t/a TRISTATE ENVIRONMENTAL SERVICES, INC. t/a TRISTATE PROBING & DRILLING, INC.; and JOHN DOE 1-10 (a fictitious name); and ABC CORPORATION 4-10 (a fictitious name), | : : : : : : : | CIVIL ACTION |
| Defendants, | : : | No. 05-4175 |
| and | : : | |
| TRISTATE ENVIRONMENTAL MANAGEMENT SERVICES, INC., improperly impleaded as TRISTATE ENVIRONMENTAL MANAGEMENT SERVICES, INC. t/a TRISTATE ENVIRONMENTAL SERVICES, INC., t/a TRISTATE PROBING & DRILLING, INC., | : : : : : : | |
| Defendant/Third-Party Plaintiff, | : : : | |
| v. | : : | |
| UNITED STATES OF AMERICA, | : : | |
| Third-Party Defendant. | : : | |

**MEMORANDUM 2 RE: CROSS MOTIONS FOR SUMMARY JUDGMENT**

**Baylson, J.**                                                                                                 **June 26, 2008**

I.   Introduction

This case involves an allegedly negligent drilling project that damaged underground

cables owned by Plaintiff National Railroad Passenger Corporation ("Amtrak").  The Court has

issued a number of prior Memoranda which explain the factual background of the case, and a detailed description of the facts will not be repeated here.[1]

The Project Manager was URS Corporation and URS Group, Inc. (collectively, "URS") and the driller was Tristate Environmental Management Services, Inc. ("Tristate"); Amtrak filed its Complaint against both. Subsequently, Tristate filed a Cross-Claim against UBS for Contribution and/or Indemnification (Doc. No. 6). Presently at issue are Amtrak's Motion for Summary Judgment against Tristate (Doc. No. 107) and Tristate's Partial Motion for Summary Judgment against Amtrak and UBS (Doc. No. 101).

**II.     Parties' Contentions**

   **A.     Amtrak**

Amtrak asserts claims of negligence and negligence per se against Tristate, with the latter based on Tristate's alleged violation of a Pennsylvania statute[2] requiring that excavators call a 1-800 number to check for under ground utilities before drilling (make a "PA One Call"). Although Amtrak does not participate in the PA One Call program, Amtrak leased some of its duct bank to MCI and AT&T, who do participate. Thus, Amtrak contends that a PA One Call would have revealed the existence of cables belonging to MCI and AT&T, the drilling would have been relocated to avoid damages to MCI and AT&T, and consequently the drilling would not have damaged Amtrak.

In the standard negligence claim, Amtrak argues that Tristate breached its duty to look for

---

[1] For a discussion of the facts, see this Court's prior Memoranda at 2008 WL 2389491 (E.D. Pa. June 10, 2008); 528 F. Supp. 2d 525 (E.D. Pa. 2007); and 2007 WL 1740276 (E.D. Pa. June 14, 2007).

[2] See 73 P.S. § 180(2.1).

underground cables by not taking reasonable precautions, such as placing a PA One Call or looking for manholes (manholes suggest the presence of underground utilities.) According to Amtrak, this breach directly caused damages amounting to $568,897. Amtrak disputes Tristate's contention that the evidence is insufficient to support its damages calculation. Amtrak argues that Robert W. Badger, its expert, meets the standards under Federal Rule of Evidence 702, and in the alternative, that it should be allowed to amend its expert disclosures if need be. Amtrak also asserts that in addition to expert testimony, it has provided other reliable evidence, such as an engineering firm's report and assessments, which support its damages calculation. Finally, Amtrak claims that whether Amtrak's evidence is sufficient to support is claim for damages is a fact issue that should go to the jury.

      **B.**    **Tristate**

It is Tristate's position that URS was responsible for checking for underground utilities. Tristate points to URS's Health and Safety Plan ("HSP") (Def.'s Ex. 16) which states that URS was responsible for locating underground utilities and obtaining utility clearances prior to drilling. According to Tristate, even if Tristate were statutorily required to place a PA One Call, URS assumed this responsibility via the HSP and is therefore liable for any damages.

Tristate also argues that it had reason to believe a proper search for utilities had been conducted. URS had hired KBN General Contractors ("KBN"), a private utility company, to search for and "mark out" the presence of underground utility cables and conduits. Tristate contends that since it knew URS had hired KBN, it was reasonable for Tristate to believe that any underground utilities had been located and the "mark-outs" had been properly performed. According to Tristate, URS neglected to explain that KBN had only "marked out" utilities in

vehicle maintenance facility (VMF) garage, and not in the VMF parking lot where the drilling at issue occurred.

In addition, Tristate claims that Amtrak has not adequately supported its damages calculation.  First, Tristate argues that Amtrak's explanation of the value of train delays is insufficient and that Mr. Badger is unqualified to testify as to such value.  Tristate contends that other information which purportedly supports Amtrak's estimated value of train delays, such as the relevant dispatcher logs, was not produced.  Tristate then asserts that Amtrak does not provide sufficient evidence to support its entitlement to or the reasonableness of "phase three" repairs, which are future, extensive repairs, involving the removal and replacement of the utility duct.  URS and Tristate have an expert report in which their expert, James M. McKay, determined that Amtrak's rationale for phase three repairs was "disingenuous in that it claims to seek to maintain a level of redundancy beyond that which would . . . be consistent with reasonable engineering practice."  Def.'s Ex. 6.

**C.   URS**

URS has not filed any motions for summary judgment.  However, in its Opposition to Tristate's Partial Motion for Summary Judgment, URS takes the position that no motion for summary judgment should be granted because the pertinent allegations of negligence should go to a jury.

URS also argues that its subcontract with Tristate provides that Tristate was responsible for obtaining all notifications and permits in conjunction with the drilling.  Furthermore, URS contends that Tristate can not escape liability since "but for" its drilling, the cables would not have been damaged.

URS asserts that it exercised reasonable care in looking for underground utilities. Since Amtrak does not participate in PA One Call, URS hired KBN to look for utilities, and KBN found none in the area where the drilling occurred. Furthermore, URS met with the landowner to look at property plans and asked the landowner for all relevant information pertaining to problems on the land. URS argues that it exercised due care and can not be found negligent.

URS also contends that Amtrak must be held liable since just prior to the drilling at issue, an Amtrak employee (identity unknown) told the Tristate driller that drilling would be fine at the location where it was set up (where the damages occurred.)

**III.    Legal Standard**

The standards by which a court decides a summary judgment motion do not change when the parties file cross-motions. Southeastern Pa. Transit Auth. v. Pennsylvania Pub. Util. Comm'n, 826 F. Supp. 1506, 1512 (E.D. Pa. 1993). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Where the non-moving party bears

the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325.  After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

## IV.  Discussion

This case involves overlapping and conflicting allegations of negligence, and a trier of fact could reasonably reach a wide range of conclusions as to which parties are responsible and to what extent.  As a result, and for the reasons discussed below, the Court concludes that the cross-motions for summary judgment should be denied.

### A.  Material Factual Issues in Dispute

The parties dispute several material issues.  For example, on the broadest level, the parties dispute whether Tristate acted as a reasonable driller should have acted and whether URS acted as a reasonable project manager should have acted.  Other areas of dispute include the relevance of the unidentified Amtrak employee stating that drilling would be fine in the designated location and the fact that Amtrak does not participate in the PA One Call program.

There are also conflicting documents.  For example, as discussed above, Tristate contends

that according to URS's HSP, URS was responsible for locating underground utilities; however URS argues that its subcontract with Tristate deems Tristate responsible for locating underground utilities. Moreover, there are disputed issues as to causation.

### B. Negligence Standards

In general, when there are substantial questions of negligence and causation, "both the Seventh Amendment and the common law require that only the jury resolve them." Arkwright Mut, Ins. Co. v. Philadelphia Elec. Co., 427 F.2d 1273, 1275 (3d Cir. 1970). "Negligence is a question for the jury to determine upon proper instruction. The court should not remove the question from the jury unless the facts leave no room for doubt." Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1373 (3d Cir. 1993) (citing Papa v. Pittsburgh Penn-Center Corp., 218 A.2d 783 (Pa. 1966)). Pennsylvania authorities are in accord with the Restatement, which states "[I]n any case in which different conclusions may be reached on the issue . . . whether the defendant has conformed to the standard of conduct required by the law" is a matter for the jury. Restatement (Second) of Torts § 328C(b) (1965). See also, Kleinknecht, 989 F.2d at 1373. In the present case, the facts leave plenty of room for a variety of conclusions as to which parties are responsible for the damages and their relative degrees of responsibility.

### V. Conclusion

For the reasons set forth in this memorandum, the Court will deny the cross-motions for summary judgment. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK) | : : : | CIVIL ACTION |
| v. | : : | |
| URS CORPORATION, et al. | : | No. 05-4175 |

**ORDER**

AND NOW, this 26th day of June, 2008, upon consideration of Plaintiff Amtrak's Motion for Summary Judgment (Doc. No. 107) it is hereby ORDERED that the Motion is DENIED.

Upon consideration of Defendant Tristate's Motion for Partial Summary Judgment (Doc. No. 101), it is hereby ORDERED that the Motion is DENIED as to Tristate's claims against URS and Amtrak. Tristate's Motion was denied as to its claims against the United States of America on June 10, 2008, and now the Motion is denied in its entirety.

The Court will hold a final pre-trial conference on July 16, 2008, at 3 p.m. in Courtroom 3A. Any pretrial motions, including but not limited to expert motions and motions in limine, shall be filed by July 10, 2008. The Court would like to try the case in August, 2008, and counsel shall discuss their availability with each other prior to the pre-trial conference. Counsel shall arrange for video depositions of any unavailable witnesses.

BY THE COURT:

s/Michael M. Baylson

Michael M. Baylson, U.S.D.J.

O:\Kathy\05-4175 Amtrak v. URS\05-4175 Cross Motions for SJ.wpd